O’NIELL, Chief Justice
 

 (dissenting).
 

 My opinion is that the bills of exception numbered 1, 2, 3 and 5 show errors which entitle the defendant to a new trial.
 

 Bills 1, 2 and 3 have reference to an objection to certain comments on the facts, by the judge in ruling upon the question of admissibility of the testimony of a witness to the fatal difficulty. The defendant is a colored man and was charged with shooting and killing a white police officer who was attempting to put him out of a dance hall on a complaint that he had not paid the price of admission. The witness could not identify the defendant in court as the man whom he had seen in the altercation with the police officer. The district attorney asked the witness what the officer was doing just before the witness heard the shots. The defendant’s attorney objected on the ground that the witness had not identified the defendant with anything that was done by the police officer or by aqy one else, meaning with the expelling of the defendant from the dance hall. The objection was one which related to the effect and not to the admissibility of the evidence, and was therefore properly overruled by the judge; but in overruling the objection the judge said: “The accused was identified by the witness before the witness answered that question.” The note of evidence attached to the bill of exception does not show that the witness answered the question as to what the police officer was doing just before the shooting; but the note of evidence does show that the witness declared on the witness stand that he could not identify the defendant as the man with whom the police officer had had the altercation, or as the man who shot the police officer. The defendant’s attorney reserved a bill of exception to the judge’s statement that the defendant was identified by the witness before the witness answered the question. The judge then added: “If the witness answers as is anticipated by the court, and as he previously answered, before the court reporter was palled in, the officer was attempting to put the man out of the dance hall, and it is admissible, and the jury will draw its conclusion as to whether the accused was the person on whom the attempt was made to remove him from the dance hall.” The latter part of the judge’s statement, that
 
 *431
 
 the jury would decide whether the defendant was the person whom the officer attempted to put out of the dance hall, was not objectionable; hut the attorney objected even to that statement; and the judge, in overruling the objection, said that it was always the function of the jury to draw its conclusions from the evidence that was admitted. The first part of the judge’s comment, however, was very objectionable; that is, that, if the witness answered as the judge anticipated, and as he had already answered before the court reporter was called in, the officer was attempting to put the man out of the dance hall at the time of the shooting. What made that comment on the part of the judge particularly objectionable was his previous comment that the witness had identified the defendant at the bar as being the man whom the police officer was attempting to put out of the dance hall before the shots were fired. To the question as to what the officer was doing just before the shots were fired .the witness replied that the officer was trying to put the man out of the dance hall. That also was objected to by the attorney for the defendant and the, objection was overruled. The district attorney then asked the witness to explain how the officer was trying to put the man out of the dance hall, and the witness replied that the officer touched the man on the shoulder, and that the reason why he was attempting to put the man out of the dance hall was that the man did not have a ticket to show 'that he had paid the fee required for the privilege of dancing. The district attorney then asked the witness what the man did when the officer tapped him on the shoulder, and the witness replied that the man stepped back from the officer and ran his hand into his pocket; the witness stated that it seemed like the man put his hand into his pocket, and when the witness was asked to state what the man did, and not what he seemed to do, the witness did not answer the question but said that the officer then brought out his gun, and that he, the witness, fell on the floor and did not see any more of the difficulty, but heard the shots. He said that there were four shots fired, that two shots were fired in quick succession and that after an interval of about five minutes two more shots were fired. The witness said that after the shooting was over he arose from the floor and saw the officer lying near the door. The district attorney again asked the witness if he thought he would recognize the man whom the officer was attempting to put out of the dance hall, if the witness should see the man again, and the witness answered “No”. The district attorney again asked him if he thought he could remember the man’s face, and the witness answered, “No sir”. , . ■, .
 

 The facts which I have recited consist of the testimony which was taken down under the provisions of Act No. 113 of 1896, to form a part of the bill of exceptions. In the case of State v. Watson, 159 La.
 
 779,
 
 106 So. 302, 303, the defendant was convicted of the crime of assault with intent to commit rape; and the verdict and sentence were set aside on account of a comment on the facts, made by the judge during the district attorney’s argument. It is stated in the opinion in the case, with reference to three of the bills of exception, that the record showed, in each instance, that there was “a variance
 
 *433
 
 between the statements in the bill of exception and the statement per curiam of the judge”. And in each "instance it was held that the testimony which was taken down under the provisions of Act No. 113 of 1896 •should prevail over the statement per curi•am. For example, I quote this statement from the opinion: “The facts upon which the hill of exception was reserved having been reduced to writing as provided by Act No. 113 of 1896, we must accept them as being correctly set forth in the note of evidence.”
 

 The hill of exception which was reserved to the judge’s comment on the facts in Watson’s case was bill No. 4; with refer•ence to which it was said: “Bill of Exception No. 4. We think this bill shows reversible error. The bill recites, among other things which we deem unnecessary to mention, that the district attorney in the ■course of his argument to the jury asked the court if there was any evidence before him of the character of the prosecutrix, and •in reply the court answered in the presence ■of the jury that there was no such evidence. In his per curiam the trial judge denies he made the statement attributed to him, but ■the clerk’s note of evidence, which we must .accept as being correct and controlling, supports the recitals of the bill as we have set them forth. The statement,' as it appears in •the note of evidence, was a comment upon the facts, amounting to a conclusion reached by the judge and expressed by him to the jury. This was contrary to the rule of law forbidding the judge to express an opinion ■on the facts of the case.”
 

 My opinion therefore is that the bills of exception numbered 1, 2, and 3 are well founded.
 

 Bill of exception No. 5 was reserved to a ruling of the judge sustaining an objection made by the district attorney to the testimony of a witness who was offered by the defendant to prove his general reputation for peace and quiet in the community in i which he lived. It appears that the witness was a merchant in the town of DeRidder, in the parish of Beauregard, where the defendant had lived up to a short time ago, when he entered the army. The witness testified that he knew the defendant, whom he referred to as “the boy”, and that he had been noticing him for about eight years; that he knew the defendant’s reputation for peace and quiet, or as a law-abiding citizen in Beauregard Parish. When the witness was asked whether that reputation was good or bad, the district attorney objected, and requested the judge to instruct the witness upon the difference between the opinion of the witness and the general reputation of the defendant. The judge instructed the witness that he should answer the question that was first asked by saying “yes” or “no”, and that then the witness would have to be questioned to determine whether he had ever heard the defendant’s reputation discussed previous to the homicide. The attorney for the defendant then asked the witness to state whether the defendant’s reputation for peace and quiet in the Parish of Beauregard was good or bad. The district attorney again objected, but before he could state the reason for his objection the judge
 
 *435
 
 said “sustained”, and the district attorney-then stated that he wanted to cross-examine the witness. The district attorney proceeded with the cross-examination by asking the witness whether he had ever-heard the reputation of “the boy” for peace and quiet discussed in the community in which he lived. The witness replied: “Not before this”. Obviously, the witness meant not before this trouble which the boy was in. And the witness said: “I will tell you where I heard it”. The district attorney said: “I just want to know when, Mr. McConthy,— has it been since this alleged killing ? ” The witness said that he guessed so, but that he did not know when the killing took place. ' The district attorney gave the date, November 14, 1941, and the witness said that he had heard the negroes talking about it “since he was home on his leave.” Inasmuch as the defendant was arrested at Barksdale Field soon after the killing, and perhaps on the same night, we doubt that he could have been “home on leave” at any time after the killing. The witness, however, said that the discussions that he. had heard concerning the defendant’s general reputation were subsequent to the killing, and were had in the store. He said that he had never heard the defendant’s reputation discussed before this trouble. The district attorney then submitted his obj ection to the court and the judge sustained it. The attorney for the defendant reserved a bill of exception; and the judge said to the witness : “In other words, the discussion was provoked by the killing and the fact that he [the defendant] was in trouble ? ” The witness replied that he had known always that the defendant was a good boy and that he had caddied for him on the golf course. In . answer to questions by the judge the witness repeated that he had never heard the defendant’s reputation discussed previous to the killing, and that the discussions that he did hear were provoked by the fact that the defendant was in this trouble. At the end of the interrogations by the judge he sustained the objection. The defendant’s attorney again reserved a bill of exception. Answering questions propounded by the attorney for the defendant the witness said that he had never heard at any time, either before or after the killing, anything derogatory of the defendant’s reputation as a law-abiding citizen in the community in which he lived; that he knew the defendant’s reputation; and that all that he could say was that he was a good boy around him, the witness. The record does not show or indicate that the jury was withdrawn while the witness was being examined for the purpose of testing the question of admissibility of the character evidence which he proposed to give to the jury. But, assuming, as I do, that the testing of the admissibility of the evidence was made in presence of the jury, it is not at all certain that the latter part of the examination of the witness, by the attorney for the defendant, after the judge had examined him and had ruled that the character evidence was inadmissible, destroyed the ill effects of the judge’s ruling. I say this because, if this latter part of the testimony on which the judge based his ruling that the character evidence was not admissible was heard by the jury, it was heard subject to the ruling by the judge that the testimony of the witness concerning the general reputation of the defendant in the
 
 *437
 
 community in which he lived was not admissible. Besides, the ruling tended to prevent the defendant’s attorney from producing ■other character witnesses who resided in the community in which the defendant was reared, and who had never heard any one discuss his character or reputation previous 'to the trouble for which he was on trial.
 

 The ruling on this bill of exception should be governed by the decision in State v. Emory, 151 La. 152, 91 So. 659, 660. In that case the defendant was convicted of having carnal knowledge of a girl under the age of 18 years, with her consent, and was sentenced to imprisonment in the penitentiary for a term not less than three nor more than four years. This court set aside the conviction on account of two rulings of the judge, similar to the ruling in the present case, on the subject of character evidence. In the decision in the Emory case it was said:
 

 “Bill No. 1 was reserved to a statement made by the judge, in the presence of the jury, while ruling upon an objection made by the prosecuting attorney. The substance of the judge’s statement was that he did not see how the witness, who was then testifying to the good character or reputation of the defendant, could know his character or reputation, or say what other people thought of him, unless the witness had discussed his character or reputation, and knew from such discussion what other people thought of it. * * * Bill No. 4 was reserved to the refusal of the judge to give the following special charge to the jury, viz.:
 

 ‘“The best
 
 evidence of good reputation is where the witness testifies that he has never heard it discussed, questioned, or talked about. The more unsullied and exalted the character is, the less likely is it ever to be called into question.’
 

 “The charge requested is a literal quotation from Wharton’s work on. Criminal Evidence (10th Ed.) vol. 1, par. 57, and the doctrine has the approval of all text-writers on the subject, and of the courts generally. Wigmore on Evidence, vol. 2, p. 1961, § 1614; 22 C.J. 484. '* * *
 

 “If such evidence was not worthy of consideration, men and women in the most exalted position or station in society would be deprived of all means of proving, if an occasion should demand proof of, their general reputation for morality or virtue. * * *
 

 “Considering that each witness had admitted, on cross-examination, that he or she had never heard the defendant’s reputation or character discussed, the statement of the judge, in the presence and hearing of the jury, to the effect that the witnesses did not know what defendant’s general reputation or character was, deprived him of the benefit of the evidence of his good reputation.”
 

 Under the authority which I have quoted the ruling in this case on the subject of the character evidence was an error for which the verdict and sentence should be set aside.
 

 For the reasons stated I respectfully dissent from the decision rendered in this case.